**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NEW BERN DIVISION
Civil Action No: 23-cv-196**

| | |
|---|---|
| **BRIANNA PAUL, individually; BRIANNA PAUL, as guardian of A.P, A.P., R.K. Jr., and A.F., her minor children; and BRIANNA PAUL, as class representative on behalf of the class defined herein,**<br><br>Plaintiffs,<br><br>v.<br><br>**THE TOWN OF HOLLY RIDGE; HOLLY RIDGE HOUSING AUTHORITY; THE PENDERGRAPH COMPANIES, LLC; PENDERGRAPH DEVELOPMENT, LLC; FRANKIE W. PENDERGRAPH; and JOHN DOE CONTRACTORS 1 through 10**,<br><br>Defendants. | |

## CLASS ACTION COMPLAINT

This is a class action brought by Brianna Paul on behalf herself, her children, and the other former residents of Holly Plaza Apartments who face the holiday season living in hotel rooms in another town with the knowledge that on January 1, 2024, they will have no home. For an unknown period of time, these residents have been exposed to mold that Defendants allowed to invade their homes to the point that their apartments are unrepairable. In addition to the disruption of their lives, the residents are suffering from personal injuries caused by exposure to mold. This is their complaint.

## PARTIES

1.      Brianna Paul is a citizen of the State of North Carolina and a resident of Onslow County. She is the single mother and legal guardian of her four children: A.P., age 10; A.P, age 12; R.K., age 14; and A.F., age 16. Brianna brings claims in this complaint on her own behalf and on behalf of her children.  She and her children are former tenants of the Holly Plaza Apartments. Brianna also brings claims as the class representative of the class defined in this complaint.

2.      The Town of Holly Ridge is a North Carolina political subdivision located in Onslow County, North Carolina.  The Town created the Holly Ridge Housing Authority.  The Town Council currently acts as the Board of the Housing Authority.  Together, the Town and the Authority own and/or are responsible for the management of the Holly Plaza Apartment complex ("Holly Plaza").  The Town and the Authority are collectively referred to as Holly Ridge.

3.      At all times relevant to this Complaint, the employees or agents of Holly Ridge were acting within the course and scope of their employment or agency with Holly Ridge.

4.      Upon information and belief, Holly Ridge does not have governmental immunity for any of the acts or omissions alleged in the Complaint because it was acting in a proprietary capacity (among other reasons).

5.      Alternatively, if it is determined that Holly Ridge has governmental immunity for any of the acts or omissions alleged in the Complaint, upon information and belief, Holly Ridge has waived governmental immunity for itself, its agents, employees, and officials by the purchase of liability purchase, the functional equivalent of liability insurance, or participation in a government risk pool.

6.      The Pendergraph Companies, LLC, and Pendergraph Development, LLC are North Carolina limited liability corporations.  Frankie W. Pendergraph is a resident of the State of North

2

Carolina and the Managing Member of Pendergraph Companies and Pendergraph Development. The Pendergraph Companies, LLC, Pendergraph Development, LLC, and Frankie W. Pendergraph are collectively referred to as Pendergraph.

7.     John Doe Contractors 1 through 10 are the unknown persons or entities who negligently performed repairs at Holly Plaza Apartments.  Plaintiffs are seeking the identity of these persons or entities and will promptly seek to amend this complaint upon discovery.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d), as there are more than 100 members of the class, minimal diversity exists as at least one member of the class is a citizen of a State other than North Carolina, and the amount in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs.

9.     This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as the breach of contract claims in Count I arise under the laws of the United States.

10.     This Court has personal jurisdiction over this action as least some of the Defendants are citizens of the State of North Carolina, the subject property is in the State of North Carolina, and acts and omissions alleged in this Complaint giving rise to Plaintiffs' claims occurred in the State of North Carolina.

11.     This Court has venue over this action under 28 U.S.C. § 1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred in this district and a substantial part of property that is the subject of the action is situated in this district.

## FACTS UNDERLYING PLAINITFFS' CLAIMS

12.     Holly Ridge caused Holly Plaza to be constructed in 1980.

13.     Some tenants at Holly Plaza receive rental assistance from the Unites States

3

Department of Housing and Urban Development ("HUD").

14.     In 2019, HUD became concerned over the management of Holly Plaza by Holly Ridge.  HUD recommended and assisted Holly Ridge in finding a private company to manage Holly Plaza.

15.     Thereafter Holly Ridge, with the approval of HUD, entered into a contract with Pendergraph to manage Holly Plaza.

16.     In 2020, the Town of Holly Ridge took over the board of the Holly Ridge Housing Authority with the members of the Town Council becoming the Board of the Housing Authority. The Authority's contract with Pendergraph was then assigned to the Town.

17.     As a proximate result of the failure to repair and/or otherwise improper repairs, water intruded into the structures of Holly Plaza and mold began to develop in the walls and ceilings of units at Holly Plaza.

18.     Brianna rented an apartment at Holly Plaza from Holly Ridge for herself and her minor children.  Brianna's lease recognized that her rent was being subsidized by HUD.

19.     The subsidization of the lease was made pursuant to an agreement between HUD and Holly Ridge.

20.     HUD has promulgated National standards for the condition of HUD housing.  24 CFR § 5.703.  "The standards under this section apply to all HUD housing."  *Id.* at § 5.703(a).  The section on "Health and safety concerns" requires:

> The ***inside, outside and unit must be free of health and safety hazards that pose a danger to residents. Types of health and safety concerns include***, but are not limited to carbon monoxide, electrical hazards, extreme temperature, flammable materials or other fire hazards, garbage and debris, handrail hazards, infestation, lead-based paint, ***mold***, and structural soundness.

24 CFR 5.703(d)(1) (emphasis added).

4

21.     Brianna's lease was subsidized with an HUD Housing Choice Voucher. Regulations for that program require that "[t]he dwelling unit must be free of pollutants in the air at levels that threaten the health of the occupants."  24 CFR § 982.401(h).

22.     HUD considers mold a pollutant.  *See* https://www.hudexchange.info /faqs/programs/housing-choice-voucher-program/uncategorized/housing-quality-standards-hqs/can-hud-provide-guidance-on-the-issue-of-mold-present-within-housing-choice/.

23.     In exchange for the rent subsidization payments for Brianna and other tenants, Holly Ridge agreed to comply with HUD's standards and safety regulations.

24.     In November of 2022, Brianna and the other tenants began to make complaints about the moldy conditions in their units after the mold became visible to them in their units. Brianna specifically complained to Pendergraph, Holly Ridge, and the Onslow County Health Department.  Her requests for remediation went unanswered and the moldy conditions worsened.

25.     On November 6, 2022, Brianna came home to water damage, wet sheet rock, and visible mold in her unit.

26.     The water damage consisted of standing water and visible mold on the first floor of her unit that had leaked from a locked closet holding the HVAC system in her unit that only Pendergraph had access to.

27.     Brianna called the Pendergraph emergency after hour line and it was not in service.

28.     Brianna notified Pendergraph the next business day of the water and visible mold.

29.     Pendergraph attempted to remediate the issues by cleaning up the water with a shop vacuum.

30.     Shortly after, Brianna notified Pendergraph that the mold had not been properly remediated and was still present.

31.     Brianna notified Karen Justice, an employee of Pengergraph, that her walls were still wet and she was concerned for A.P. considering she has asthma.

32.     Pendergraph still did not remediate the problem.

33.     On December 13, 2022, Pendergraph did testing for mold of Brianna's unit.

34.     Pendergraph told Brianna mold was not active in her unit.

35.     Pendergraph refused to release the mold results to Brianna.

36.     Pendergraph told Brianna that her unit did not present any health risks.

37.     In January of 2023, another tenant in Building G complained of water intrusion.

38.     On January 11, 2023, Pendergraph attempted to remediate this mold complaint filed by another Holly Ridge tenant in Brianna's building.

39.     Pendergraph hired Service Master to remediate the mold.

40.     Service Master removed the sheet rock in Brianna's unit to find visible mold on the studs inside her walls.

41.     Pendergraph came and sprayed the mold with a chemical and put up new sheet rock.

42.     Brianna requested the Material Safety Data Sheet for the chemicals sprayed in her unit.

43.     Pendergraph refused to disclose what chemicals were sprayed in the unit and would not provide a Material Safety Data Sheet.

44.     On February 28th, 2023, Brianna notified Pendergraph that visible mold was continuing to grow in her apartment.

45.     Brianna submitted photographs to Pendergraph of mushrooms growing out of her wall.

46.     Pendergraph hired Stanley Steamer to clean the mold.

6

47.     Stanley Steamer recommended a thorough cleaning of the visible mold growing out of the walls and a more thorough look behind the sheet rock to determine how invasive the mold was.

48.     Pendergraph denied the Stanley Steamer recommendation.

49.     Stanley Steamer also indicated mold had spread into Brianna's duct work.

50.     Pendergraph ordered Stanley Steamer to only clean the duct work in Brianna's unit.

51.     After this duct work cleaning, Pendergraph notified Brianna that her unit posed no health risks.

52.     On Friday, October 27, 2023, Brianna was notified by Holly Ridge that Brianna and many others were potentially at risk of mold exposure and needed to vacate the premises by Monday, October 30, 2023.

53.     Holly Ridge told Brianna to try and take everything of value with her.

54.     Holly Ridge told Brianna that she would be accommodated in a hotel room at 139 Circuit Ln., Jacksonville, NC 28546 at Home2 Suites by Hilton.

55.     Brianna was notified that if she attempted to go back on her porch or into her unit, she would be escorted off by Holly Ridge Police Department.

56.     Thereafter, the mold went unabated.

57.     On November 3, 2023, as a result of mold complaints, Brianna's unit was inspected by Holly Ridge.

58.     On November 7, 2023, Brianna's unit was inspected by Pendergraph.

59.     On November 8, 2023, the Town Manager notified Brianna Paul that her unit was not safe, and she could not return.

60.     Thereafter, Brianna sought medical attention for herself and family.  Her blood was

7

tested, and her the test was positive for five different types of mold: curvularia, lunata, epicoccum, monilifor, helminthosporium, and alternata/tenuis.

61.     As a result of the exposure to mold, Brianna's 10-year-old daughter A.P. has been put on a nebulizer and is breathing through a tube. She is also experiencing nose bleeds and migraines.

62.     Brianna and the other tenants at Holly Plaza were notified on November 21, 2023, that Holly Ridge will be condemning all units at Holly Plaza because Holly Ridge's Building Inspector determined the buildings at Holly Plaza are unsafe for human habitation.

63.     Holly Ridge further notified Brianna and the other tenants that Holly Ridge will accommodate them at the hotel until December 31, 2023. After this date they will be on her own.

64.     Finally, Holly Ridge accepted Pendergraph's offer to immediately terminate Pendergraph's management contract.

**COUNT I –**
**Breach of Contract**
(Against Holly Ridge and Pendergraph)

65.     Plaintiffs reassert and reallege the allegations above and in addition state as follows:

66.     Holly Ridge and/or Pendergraph agreed to comply and were required to comply with applicable HUD regulations and standards at Holly Plaza.

67.     Holly Ridge and Pendergraph allowed conditions at Holly Plaza to occur and remain that led to the infestation of the property with mold.

68.     The presence of mold at the property is so pervasive that the property has been condemned.

8

69. The existence of mold in and around the dwelling units at Holly Plaza constitutes safety hazards inside and outside the units that pose a danger to residents in violation of 24 CFR 5.703(e)(1).

70. The existence of mold in and around the dwelling units at Holly Plaza causes the dwelling units to have "pollutants in the air at levels that threaten the health of the occupants" in violation of 24 CFR § 982.401(h).

71. Holly Ridge and Pendergraph breached the contract that they had with HUD.

72. Brianna and the other tenants at Holly Ridge are third party beneficiaries of the agreement between HUD and Holly Ridge and Pendergraph.

73. As a proximate result of the aforesaid, Plaintiffs and the other tenants comprising the class have suffered personal injuries, economic, and non-economic damages in an amount to be determined by the jury in this action.

**COUNT II –**
**RRAA; Breach Of Warranty Of Habitability**
(Against Holly Ridge and Pendergraph)

74. Plaintiffs reassert and reallege the allegations above and in addition state as follows:

75. Defendants had a duty to provide Plaintiffs with fit and habitable housing under the North Carolina Residential Rental Agreements Act ("RRAA"), N.C. Gen. Stat. § 42-38 *et seq.*

76. Plaintiffs' leases were subject to the RRAA. During all relevant times, Holly Ridge was the owner and contracting party pursuant to the lease and otherwise subject to the RRAA.

77. During all relevant times, Pendergraph was the property manager, an agent of the owner, and/or otherwise was subject to the coverage of the RRAA.

78. During all relevant times, Defendants, jointly and severally, acted as the property manager and a contracting party pursuant to the lease, an agent of the owner, or otherwise were

9

materially involved in providing property management services under the lease and subject to the RRAA.

79. During all relevant times, some or all of Defendants had actual or apparent authority to perform the landlords' obligations under the lease and the RRAA.

80. During all relevant times, N.C. Gen. Stat. § 42-42(a)(1) required Defendants to comply with the current applicable building codes, including, but not limited Town of Holly Ridge Code of Ordinances, Ch. 6, Building Regulations.

81. N.C. Gen. Stat. § 42-42(a)(2) required Defendants to make all repairs and do whatever necessary to put and keep the premises in a fit and habitable condition.

82. N.C. Gen. Stat. § 42-42(a)(8) required Defendants, within a reasonable period of time based upon the severity of the condition, to repair or remedy any imminently dangerous condition on the premises after acquiring actual knowledge or receiving notice. Imminently dangerous conditions include excessive standing water, sewage, or flooding problems, caused by plumbing leaks or inadequate drainage that contribute to mold.

83. During all pertinent times, Defendants, under all the facts and circumstances, had sufficient actual knowledge of pervasive defects and dangerous conditions in the units comprising the Holly Plaza so as to be deemed to have been on notice for purposes of triggering any RRAA duties that had a notice prerequisite. Defendants received numerous complaints and repair requests, including those from Plaintiffs. As such, Plaintiff satisfied any applicable notice requirements for purposes of triggering any RRAA duties that have a notice prerequisite.

84. Under N.C. Gen. Stat. § 42-42(b), Defendants are not released from their obligations by Plaintiffs' explicit or implicit acceptance of the landlord's failure to provide

10

premises complying with N.C. Gen. Stat. § 42-42, whether done before the lease was made, when it was made, or after it was made.

85.     Defendants violated N.C. Gen. Stat. § 42-42 in the following particulars as to Plaintiffs:

A.  By failing to make all repairs and do whatever necessary to put and keep the relevant homes in fit and habitable conditions;

B.  By failing to repair or remedy imminently dangerous conditions within a reasonable period of time based on the severity of the conditions;

C.  By breaching the Holly Ridge Code of Ordinances, Ch. 6, Building Regulations § 6.2(m), § 6.5(a)(3), § 6.5(a)(5); § 6.16; § 6.17 (c), § 6.17 (z); § 6.18; § 6.19, in one or more respects;

D.  By leasing and allowing families to occupy dwellings in known violation of relevant provisions of the Holly Ridge Code of Ordinances, Ch. 6, Building Regulations; and

E.  In at other ways Plaintiffs will prove at trial.

86.     Defendants had a duty to provide fit and habitable housing not only under the RRAA but under federal regulations and North Carolina common law.

87.     Defendants impliedly warranted to Plaintiffs that the leased premises were in fit and habitable condition. In fact, Defendants knew or should have known that the rental homes had many defects, including mold and other deficiencies.

88.     The property leased by Plaintiffs had improper construction and/or repairs, pervasive mold, and other conditions which threaten the health and safety of Plaintiffs and family members.

89.     Defendants had adequate time to repair and remedy the unsafe and unsanitary conditions after years of complaints and repair requests but have failed to make a reasonable effort to repair and remedy the defective conditions.

11

90.     Plaintiffs and the other tenants who comprise the class are entitled to the abatement of rent payments made by them or on their behalf by HUD for the period of time their units at Holly Plaza were uninhabitable, entirely or in part.

91.     As a direct and proximate result of Defendants violations of N.C. Gen. Stat. § 42-42, Plaintiffs sustained damages including personal injuries, economic, and noneconomic losses.

92.     As a direct and proximate result of Defendants' breaches of their implied warranty of habitability, Plaintiffs were injured, and are entitled to damages in an amount to be determined by the jury in this action, and declaratory, injunctive, or equitable relief to the extent available.

## COUNT III
### Violations of UDTPA
(against all Defendants)

93.     Plaintiffs reassert and reallege the allegations above and in addition state as follows:

94.     At all times relevant herein, Defendants were engaged in commerce in the State of North Carolina by renting and managing residential real estate to Plaintiffs in North Carolina.

95.     Defendants are proper defendants under the UDTPA.

96.     Plaintiffs and the other former tenants who comprise the class are members of the consuming public as defined by UDTPA, as they sought to acquire goods and services by lease, namely a habitable, properly maintained residence from Defendants.

97.      Unfair and deceptive trade practices related to marketing of rental housing to prospective customers and in connection with performing landlord and property management duties are subject to the UDTPA because the rental of residential housing is considered commerce pursuant to N.C. Gen. Stat. § 75-1.1.

98.     The conduct of Defendants as set forth herein is against established public policy of the State; is unethical, oppressive, unscrupulous, and substantially injurious to consumers; and has the capacity and tendency to deceive the average consumer.

12

99.     Defendants, in the course of leasing to Plaintiffs, violated the UDTPA in multiple respects, including without limitation:

A.      By breaching the implied warranty of habitability and the RRAA;

B.      By engaging in an unconscionable course of action;

C.      By failing to correct defects and demanding continued rent payments after Defendants knew that the property management service provided by Defendants violated N.C. Gen. Stat. § 42-42 and the RRAA;

D.      By failing to correct defects and demanding continued rent payments after Defendants knew that leased premises violated Town of Holly Ridge;

E.      By collecting rent after having knowledge of the uninhabitable nature of part and/or all of Plaintiffs' leased premises;

F.      By failing to honor promises to correct deficiencies in Plaintiffs' leased premises and continuing to demand rent;

G.      By misrepresenting the condition, fitness and habitability of the rental property;

H.      By utilizing false representations and deceptive measures to avoid incurring customer service and repair and maintenance costs as well as the costs of extensively renovating or replacing housing units;

I.      By knowingly making false or misleading statement of facts concerning the need for parts, replacement, or repair service;

J.      By knowingly making false or misleading statement of facts related to the existence of and cause of pervasive mold in the leased premises;

K.      By representing that work or services had been performed on, or parts replaced in, goods when the work or services were not performed or the parts replaced;

L.	By failing to disclose information concerning defects known to Defendants;

M.	By undertaking conduct which Defendants knew, or should have known, offended well-established public policy, state law, and was otherwise unlawful, unfair, deceptive, misleading, coercive, and substantially injurious to Plaintiffs;

N.	By manipulating service and repair records; and

O.	By such other ways Plaintiffs may prove at trial.

100.	Some or all of the improper conduct alleged herein were done willfully, or with the conscious disregard of the rights of Plaintiffs.

101.	Defendants received numerous complaints and repair requests, including those from Plaintiffs.

102.	Defendants, by virtue of their course of administering, leasing, building and repairing units at Holly Plaza were uniquely aware of the condition of them, improper construction and/or repair of the buildings, pervasive mold and other potentially hazardous conditions. Nevertheless, Defendants knowingly and intentionally leased units to Plaintiffs and others, represented that they were habitable, and that appropriate repair and remedy work had been undertaken in the past and would be undertaken in the future.

103.	Despite the aforementioned violations, Defendants collected the full amount of rent, giving Plaintiffs no discount for the condition of their housing, nor for the inadequate repair and maintenance.

104.	Plaintiffs suffered actual injury as a direct and proximate result of Defendants' unfair and deceptive actions, including, but not limited to, the overpayment of rent.

105.	Defendants' actions were in or affecting commerce and constitute unfair and deceptive trade practices, proscribed by Chapter 75 of the North Carolina General Statutes.

14

106.     Plaintiffs have been damaged and are entitled to recover compensatory damages in an amount to be determined by the jury in this action, treble damages, and attorney's fees.

**COUNT IV**
**Breach of Contract/Breach of Implied Covenant of Good Faith and Fair Dealing**
(Against Town of Holly Ridge)

107.     Plaintiffs reassert and reallege the allegations above and in addition state as follows:

108.     Plaintiffs entered into a valid contract with Defendant in the form of a lease.

109.     The lease imposed explicit or implied duties on Defendants Town of Holly Ridge and Pendergraph Management, as owner and property manager respectively, to perform the contract so as to ensure the units were fit for human habitation.

110.     Defendants failed to comply with the material terms of the lease by failing to ensure the houses were fit for human habitation and by failing to diligently repair and remedy the conditions affecting habitation.

111.     It is well-established that a contract carries with it an implied covenant by the parties to act fairly and in good faith in carrying out the agreement.  Accordingly, Plaintiffs allege breach of the implied covenant of good faith and fair dealing.

112.     Defendants had an implicit obligation to act in good faith and make reasonable efforts to perform their obligations under the lease including, but not limited to, keeping the residence safe and habitable, providing adequate repair and maintenance services, providing honest information to the tenants, and not using Defendants' vastly more powerful economic position to oppress and intimidate families.

113.     Plaintiffs reasonably understood and expected that Defendants would, in accordance with their lease:

A. Communicate truthful information regarding known defects in the housing, including material facts regarding the condition of the leased home, of which Defendants had knowledge, and Plaintiffs lacked knowledge;

B. Respond promptly, effectively, and truthfully to concerns about the condition of the leased property, including refraining from providing misinformation when responding to concerns;

C. Faithfully observe and comply with all applicable Federal, State and local laws, rules, regulations, orders, ordinances, and other governmental standards and requirements including, but not limited to, N.C. Gen. Stat. § 42-42;

D. Maintain leased property in good order and in a decent, safe and sanitary condition;

E. Ensure professional management and maintenance of housing consistent with the standard of a market-rate rental development;

F. Refrain from leasing houses that did not meet minimum adequacy standards for health and safety;

G. Undertake repairs, renovations, remediations and construction in compliance with local building codes and ordinances, and commensurate with industry standards and the representations made to induce families to lease;

H. Make sure the rental units are free from defects which would affect the safety, appearance, or habitability of the rental property, and make sure that units have components and construction to maintain safety;

I. Inspect housing for suitability based on environmental, health, and safety considerations prior to leasing;

J. Refrain from leasing residential housing which Defendants knew or should have known would pose a health risk to residents.

114.    Defendants breached their contract and implied covenant of good faith and fair dealing with Plaintiffs including, but not limited to, by engaging in the acts and omissions described hereinabove.

115.    Plaintiffs sustained damages as a result of Defendant Town of Holly Ridge's breaches of contract, including due to the overpayment of rent, as well as incurring out-of-pocket expenses and other consequential and special damages in amounts to be proven at trial.

16

116.    As a proximate and legal result of Defendant's breaches of contract, Plaintiffs are entitled to compensatory damages in an amount to be determined by the jury in this action.

## COUNT V
### Negligence
(Against all Defendants)

117.    Plaintiffs reassert and reallege the allegations above and in addition state as follows:

118.    Defendants owed the following duties to Plaintiffs:

A.    To communicate truthful information regarding known defects in rental property, including material facts regarding the condition of leased homes which Defendants had knowledge, and Plaintiffs lacked knowledge, of which Plaintiffs ought reasonably to be informed before entering into residential leases;

B.    To respond promptly, effectively, and truthfully to concerns about the condition of the premises expressed to them by Plaintiffs, including refraining from providing misinformation when responding to concerns;

C.    Faithfully observe and comply with all applicable Federal, State and local laws, rules, regulations, orders, ordinances, and other governmental standards and requirements including, but not limited to, N.C. Gen. Stat. § 42-42;

D.    Maintain leased property in good order and in a decent, safe and sanitary condition;

E.    Ensure professional management and maintenance of housing consistent with the standard of a market-rate rental development;

F.    Refrain from leasing houses that did not meet minimum adequacy standards for health and safety;

G.    Undertake repairs, renovations, remediations and construction in compliance with local building codes and ordinances, and commensurate with industry standards and the representations made to induce families to lease;

H.    Make sure the rental units are free from defects which would affect the safety, appearance, or habitability of the rental property, and make sure that Units have components and construction to maintain safety;

I.    Inspect housing for suitability based on environmental, health, and safety considerations prior to leasing;

J.    To provide a hazard-free living environment;

17

K.      To refrain from leasing residential housing which Defendants knew or should have known would pose a health risk to residents;

L.      To adhere to the terms of the residential leases; and

M.      To exercise reasonable care for the safety of foreseeable tenants/Plaintiffs.

119.    Defendants breached their duties to Plaintiffs.

120.    Defendants' breaches of duties constitute negligence, gross negligence, negligence *per se*, and/or reckless and willful conduct.

121.    As a proximate and legal result of Defendants' breaches of the duty of care, Plaintiffs have been injured.

122.    Plaintiffs have been injured as a result of Defendants' breaches of the duty of due care, including by suffering injury to personal property, and/or, by suffering injury to their person, adverse health effects, physical symptoms or significant illness, caused by mold exposure arising out of Defendants' negligence, or by other foreseeable impacts of the negligence; and have incurred out-of-pocket, actual, special or consequential damages.

123.    As a proximate and legal result of Defendants' negligence, recklessness, and gross negligence, Plaintiffs are entitled to an award of damages in amounts to be determined by the jury in this action at time of trial. To the extent that Defendants' conduct was undertaken intentionally or with reckless disregard for the foreseeable consequences to Plaintiffs, and the requirements of N.C. Gen. Stat. § 1D-1 *et seq.* have been met by the evidence, Plaintiffs are also entitled to exemplary or punitive damages from the Defendants other than Holly Ridge and are entitled to punitive damages from Holly Ridge to the extent it is specifically authorized by statute.

**COUNT VI**
**Temporary Recurrent Private Nuisance**
(Against all Defendants)

124.    Plaintiffs reassert and reallege the allegations above and in addition state as follows:

18

125.    Plaintiffs who occupied the residential units during the pertinent times have standing to bring this claim due to their lawful possessory and occupancy interest.

126.    During the pertinent times, the Defendants proximately caused the Plaintiffs to incur a substantial and unreasonable interference with their ability to use and enjoy their leasehold property.

127.    As a direct and proximate result of Defendants' creation and maintenance of a temporary and recurrent private nuisance, the Plaintiffs have been injured and damaged.

128.    Furthermore, the nuisance conditions herein are abatable but Defendants have unreasonably refused to abate them.

129.    The nuisance herein was temporary and recurrent.

130.    As a result of the Defendants' creation and maintenance of a private nuisance, the Plaintiffs are entitled to compensatory damages for their discomfort, annoyance, aggravation, irritation and loss of use and enjoyment in an amount to be determined by the jury in this action.

**COUNT VII**
**Punitive Damages**
(Against Town of Holly Ridge and Pendergraph)

131.    Plaintiffs reassert and reallege the allegations above and in addition state as follows:

132.    As set forth below, Plaintiffs are entitled to exemplary or punitive damages from the Defendants other than Holly Ridge and are entitled to punitive damages from Holly Ridge to the extent it is specifically authorized by statute.

133.    This relief is brought alternatively as a claim for relief or as a remedial allegation.

134.    Under N.C. Gen. Stat. § 1D-15, punitive damages may be awarded if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present and was related to the injury for which compensatory damages

19

were awarded: (1) Fraud; (2) Malice; or (3) Willful or wanton conduct. The claimant must prove the existence of an aggravating factor by clear and convincing evidence.

135.     Under the circumstances, there are adequate facts to demonstrate the existence of an aggravating factor within the meaning of Chapter 1D due to the commission of malice or willful or wanton conduct. Willful or wanton conduct means the conscious and intentional disregard of and indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage or other harm. Willful or wanton conduct means more than gross negligence.

136.     The malice or willful or wanton conduct was related to the injury to the plaintiff for which the finder of fact may award relief under one or more of the merits claims which constitute adequate predicate claims for punitive damages.

137.     The Defendants' officers, directors or managers participated in or condoned the malice or willful or wanton conduct.

138.     The Plaintiffs are entitled to punitive damages in an amount reasonably needed, considering:

    A.   The need to punish the Defendants for egregiously wrongful acts committed against the Plaintiffs and to deter the Defendants and others from committing similar wrongful acts, considering only that evidence which relates to the reprehensibility of the Defendants' motives and conduct;

    B.   The likelihood, at the relevant time, of serious harm to the Plaintiffs or others similarly situated;

    C.   The degree of the Defendants' awareness of the probable consequences of its conduct; the duration of the Defendants' conduct;

    D.   The actual damages suffered by the Plaintiffs;

    E.   Any concealment by the Defendants of the facts or consequences of its conduct;

    F.   The existence and frequency of any similar past conduct by the Defendants; whether the Defendants profited by the conduct; and

G. The Defendants' ability to pay punitive damages, as evidenced by its revenues or net worth.

## CLASS ACTION ALLEGATIONS

139. This suit is properly maintainable as a class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure.

140. Fed. R. Civ. Pr. 23(b)(3) provides that a class action may be maintained if:

the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;

(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

(D) the likely difficulties in managing a class action.

141. The Plaintiffs seek certification of the following class: all tenants and former tenants of Holly Plaza between January 1, 2019 and present.

142. The Plaintiffs seek certification of the following subclass: All members of the class that sustained personal injuries as a result of the presence of pervasive mold in the leased residential properties. Plaintiffs seek certification of this subclass only on the issue of liability pursuant to Rule 23(c)(4).

143. The members of the prospective class are so numerous that joinder of all class members is impractical. Plaintiffs' good faith belief is that there are more than 100 class members. The exact number and identities of the class members are currently unknown and can only be ascertained from the books and records of the Defendants and/or appropriate discovery.

21

144.    Common questions of law and fact exist as to all members of the class that predominate over any questions affecting any individual class members.

145.    Common questions of fact include, but may not be limited to:

a.    Did the Defendants improperly construct and/or repair the residential housing leased by the Plaintiffs?

b.    Did the Defendants' improper construction and/or repairs result in pervasive mold in the residential housing leased by Plaintiffs?

c.    Did the Defendants fail to disclose material facts regarding the improper construction and/or repairs and the presence of mold in the residential housing leased by Plaintiffs?

d.    Did the Defendants respond promptly, effectively, and truthfully to concerns about the condition of the leased residential housing?

e.    Did the Defendants maintain the leased residential housing in good order and in a decent, safe, and sanitary condition?

f.    Did the Defendants ensure professional management and maintenance of housing consistent with the standard of a market-rate rental development?

g.    Did the Defendants lease residential housing that did not meet minimum adequacy standards for health and safety?

h.    Did the Defendants undertake repairs, renovations, remediations and construction of the residential housing in compliance with local building codes and ordinances, and commensurate with industry standards?

i.    Did the Defendants fail to make all repairs and do whatever was necessary to put and keep the residential housing in fit and habitable condition?

j.    Did the Defendants fail to repair or remedy imminently dangerous conditions within a reasonable period of time based on the severity of the conditions?

k.    Did the Defendants make sure the leased residential housing units were free from defects which would affect the safety, appearance, or habitability?

l.    Did the Defendants inspect the residential housing for suitability based on environmental, health, and safety considerations prior to leasing?

m.    Did the Defendants lease residential housing which they knew or should have known would pose a health risk to residents?

n.     Did the Defendants collect rent or attempt to collect rent after having knowledge of the uninhabitable nature of part and/or all of the residential housing leased to Plaintiffs?

o.     Did the Defendants represent that work or services had been performed on, or parts replaced in, goods when the work or services were not performed, or the parts replaced?

p.     Did the actions of the Defendants result in personal property damage and economic loss to the members of the class?

q.     Did the actions of the Defendants result in personal injuries and economic loss to the members of the class?

146.   Common questions of law include, but may not be limited to:

a.     Did the Defendants Holly Ridge and Pendergraph Management violate the North Carolina Residential Rental Agreements Act ("RRAA"), N.C. Gen. Stat. § 42-38 et seq.?

b.     Did the Defendants Holly Ridge and Pendergraph Management breach the implied warranty of habitability?

c.     Did the Defendants violate the UDTPA?

d.     Did the Defendants breach their contracts/leases with the Plaintiffs and breach the implied covenant of good faith and fair dealing?

e.     Was the Defendants' conduct negligent?

f.     Was the Defendants' conduct willful or wanton?

g.     Did the Defendants' conduct create a temporary recurrent private nuisance?

147.   Plaintiffs' claims are typical of the claims of the class and Plaintiffs have the same interest as all other members of the class - they all have an identical interest to pursue the claims as it relates to Defendants' conduct.

148.   Plaintiffs will fairly and adequately represent and protect the interest of the class. Plaintiffs are individuals who were harmed by Defendants' conduct. The interests of the Plaintiffs are coincident to, and not antagonistic to, the interest of other class members.

23

149.     Plaintiffs have retained counsel with experience in class action litigation, as well as other complex litigation.

150.     The questions of law and fact common to members of the class predominate over any questions affecting individual class members. The prosecution of separate actions by individual members of the class would result in duplicative litigation over the same issues and possibly create a risk of inconsistent or varying adjudications that could result in establishing inconsistent standards of conduct, policies and/or procedures for the Defendants.

151.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the expense and burdens of individual litigation make it difficult for members of the class to individually seek redress of the wrongs imposed upon them.

152.     The prosecution of this action as a class action will eliminate the possibility of repetitious litigation.  Moreover, neither Plaintiffs, nor their counsel, will have difficulty managing their respective roles in prosecuting this action as a class action.

153.     The class is readily ascertainable based on Defendants' records.

## JURY DEMAND

Plaintiffs respectfully demand a trial by jury of all claims and issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs pray for judgment in their favor against Defendants as follows:

1.     For a finding in Plaintiffs favor on all causes of action and for an award of actual, compensatory, special, and consequential damages in an amount to be proven at trial;

2.     For an award of treble damages as provided by N.C. Gen. Stat. § 75-16;

3.     For an award of rent refund/restitution/abatement in an amount to be determined by the Court or jury;

4.     For disgorgement of the profits and fees collected by Defendants;

5.    For an award of reasonable attorneys' fees and costs to the extent allowed under North Carolina law, including under N.C. Gen. Stat. § 75-16.1;

6.    For an award of punitive damages to the extent the evidence may show violation of Chapter 1D of the North Carolina General Statutes and proof of an aggravating factor; and

7.    For such other and further relief as the Court may deem just and proper.


November 27, 2023.


                                                    /s/ Anna Majestro
                                                    Anna C. Majestro, N.C. Bar # 50850
                                                    Benjamin S. Chesson, N.C. Bar # 41923
                                                    J. Douglas Grimes, N.C. Bar # 32699
                                                    David N. Allen, N.C. Bar # 9095
                                                    ALLEN, CHESSON & GRIMES PLLC
                                                    505 N. Church St.
                                                    Charlotte, NC 28202
                                                    Telephone: 704.755.6010
                                                    amajestro@allenchesson.com
                                                    bchesson@allenchesson.com
                                                    dgrimes@allenchesson.com
                                                    dallen@allenchesson.com

                                                    David S. Miller Jr. (*pro hac* forthcoming)
                                                    MILLER LAW, LLC
                                                    81 Columbus Street, Unit A
                                                    Charleston, SC 29403
                                                    Telephone:843-822-131
                                                    david@attorneymiller.com

                                                    Anthony J. Majestro (*pro hac* forthcoming)
                                                    West Virginia Bar No. 5165
                                                    POWELL & MAJESTRO PLLC
                                                    405 Capitol Street, Suite P-1200
                                                    Charleston, WV 25301
                                                    Tel: (304) 346-2889
                                                    Fax: (304) 346-2895
                                                    amajestro@powellmajestro.com

                                                    *Attorneys for Plaintiffs*