IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

Case No. 7:23-CV-01625-M

BRIANA PAULL, individually;
BRIANA PAULL, as guardian of
A.P, A.P., R.K. Jr., and A.F.,
her minor children; and
BRIANA PAULL, as class representative
on behalf of the class defined herein,

     Plaintiffs,

v.

THE TOWN OF HOLLY RIDGE;
HOLLY RIDGE HOUSING
AUTHORITY; THE PENDERGRAPH
COMPANIES, LLC; PENDERGRAPH
DEVELOPMENT, LLC;
PENDERGRAPH MANAGEMENT,
LLC; FRANKIE W. PENDERGRAPH;
and JOHN DOE CONTRACTORS 1
through 10,

     Defendants.

ORDER

This matter comes before the court on Defendant Town of Holly Ridge's (the "Town's")

motion to dismiss [DE 28]. For the reasons that follow, the motion to dismiss is granted in part

and denied in part.

1

## I. Plaintiffs' Facts[1]

Plaintiffs are former tenants and residents of the Holly Plaza Apartments ("Holly Plaza"). DE 24 at 1. Defendants are the Town, the Holly Ridge Housing Authority (the "Housing Authority"), the Pendergraph Companies, LLC, Pendergraph Development, LLC, Pendergraph Management, LLC, Frankie Pendergraph (collectively with the Pendergraph entities, "Pendergraph"), and several yet-unknown Contractors that worked on Holly Plaza. *Id.* at 2-3. The Town created the Housing Authority; those two entities collectively own Holly Plaza. *Id.* at 2.

Holly Plaza was constructed in 1980. *Id.* at 3. Some tenants there received rental assistance from the Unites States Department of Housing and Urban Development ("HUD"). *Id.* at 4. In 2019, HUD "became concerned" over conditions at Holly Plaza and recommended that the Housing Authority hire a private company to manage the property. *Id.* As a result, the Housing Authority entered into a contract with Pendergraph to manage Holly Plaza. *Id.* at 4. In 2020, the Town took over the board of the Housing Authority. *Id.* The contract with Pendergraph was assigned to the Town. *Id.*

Around that time, water began to seep into Holly Plaza and mold developed in the walls and ceilings due to a "failure to repair and/or otherwise improper repairs." *Id.* By accepting rent-subsidized payments from Plaintiffs, the Town agreed to abide by HUD regulations requiring dwellings to be free of pollutants. *Id.* at 5. Per HUD regulations, mold is a pollutant. *Id.*

---

[1] At this stage, the court "must consider the complaint in its entirety, as well as . . . documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007). Within that scope, the "court accepts all well-pled facts as true and construes the[] facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

2

In November 2022, Plaintiff Paull and others complained about mold throughout their dwellings. *Id.* These complaints were not addressed. *Id.* Conditions at Holly Plaza worsened. *Id.* Some units had visible mold, standing water, and wet walls. *Id.* at 5-6.

The next month, Pendergraph tested for mold in Plaintiff Paull's unit. *Id.* at 6. Pendergraph told her that "mold was not active in her unit," but "refused to release the mold results" to her. *Id.* Several weeks later, a contractor removed sheet rock in Plaintiff Paull's unit and found visible mold on the studs in the walls. *Id.* Pendergraph "sprayed the mold" with a chemical solution and "put up new sheet rock." *Id.*

Throughout 2023, Plaintiff Paull continued to complain about the mold at Holly Plaza. *Id.* Visible mold continued to spread. *Id.* Mushrooms began to grow out of the wall in Plaintiff Paull's unit. *Id.* Pendergraph hired another contractor to address the mold, but did not agree to several of the cleaning recommendations from the contractor. *Id.* at 7. After authorizing a limited cleaning of the "duct work," Pendergraph told Plaintiff Paull "her unit posed no health risks." *Id.*

On October 27, 2023, the Town abruptly informed Plaintiffs that they were at risk of mold exposure. *Id.* Plaintiffs were told to vacate Holly Plaza within 72 hours. *Id.* The Town also told Plaintiffs to remove everything of value from their units. *Id.* Plaintiffs were moved into rooms at local hotels. *Id.* They were told not to attempt to return to their homes. *Id.*

In November 2023, the Town and Pendergraph inspected Holly Plaza. *Id.* The Town's building inspector concluded the units were not safe for human habitation. *Id.* at 8. On November 21, the Town informed Plaintiffs that Holly Plaza would be condemned. *Id.* The Town agreed to accommodate Plaintiffs at local hotels until December 31, 2023, but not after that. *Id.*

Plaintiff Paull had her blood tested, and it was positive for five different types of mold. *Id.* Her 10-year-old daughter is now on a nebulizer and breathes through a tube. *Id.* Her daughter also suffers from recurrent nosebleeds and migraines. *Id.*

## II. Procedural History

Plaintiff Paull, on behalf of her minor children and a putative class of former Holly Plaza tenants, instituted this action on November 28, 2023. DE 2. A few months later, Plaintiffs filed an amended complaint, in which they bring a series of claims against Defendants including breach of contract, breach of the warranty of habitability, violations of the unfair and deceptive trade practices act ("UDTPA"), breach of the implied covenant of good faith and fair dealing, negligence, and temporary recurrent private nuisance. DE 24 at 8-19. Plaintiffs further seek punitive damages and class certification. *Id.* at 19-24.

Pendergraph answered the amended complaint. DE 27. The Town did not. Pendergraph also filed a cross claim against the Town. *Id.* at 31-33.

In lieu of an answer, the Town filed the motion to dismiss, or alternatively, for judgment on the pleadings. DE 28. The Town seeks dismissal of all claims against the Housing Authority, on the basis that the Town dissolved the Housing Authority in 2020. DE 30 at 5. Next, the Town argues for dismissal of all claims against it based on governmental immunity. *Id.* at 6-7. The Town then contends that punitive damages are unavailable against it. *Id.* at 8. Next, the Town asserts that UDTPA claims may not lie against a local government. *Id.* at 9-10. The Town also argues for dismissal of all claims, citing the contract the Housing Authority entered into with Pendergraph. *Id.* at 10-12. Lastly, the Town contends that claims of certain putative class members are barred by releases of liability. *Id.* at 12-13.

4

Pendergraph filed a response in opposition to the Town's motion to dismiss. DE 34. Although uncommon, such a response is authorized by this court's Local Rules. *See* Local Civil Rule 7.1(f) ("Any party may file a written response to any motion."). One defendant opposing another defendant's motion to dismiss in a multi-defendant action "is entirely appropriate where, as here, [the opposing defendant] has filed a cross-claim against the [moving defendant]." *Milne v. USA Cycling Inc.*, 489 F. Supp. 2d 1283, 1285 n.3 (D. Utah 2007), *aff'd*, 575 F.3d 1120 (10th Cir. 2009). Pendergraph's response is properly before the court.

Plaintiffs also filed a response in opposition to the motion to dismiss. DE 35. The Town replied, DE 37, and this matter is ripe for disposition.

## III. Standards of Review

### a. Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure challenges the court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Through such a motion, a defendant may raise either a facial or factual challenge to subject matter jurisdiction. *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). A facial challenge "contend[s] that a complaint simply fails to allege facts upon which subject matter jurisdiction can be based." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (internal quotation mark omitted). A factual challenge contends "that the jurisdictional allegations of the complaint [a]re not true." *Adams*, 697 F.2d at 1219.

A district court treats facial and factual challenges to subject matter jurisdiction differently. "When a defendant makes a facial challenge to subject matter jurisdiction," the plaintiff is "afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration," namely that the court accepts the factual allegations as true and construes them in the light most favorable to the plaintiff. *Kerns*, 585 F.3d at 192. But with a factual challenge, the

5

court may "go beyond the allegations of the complaint and in an evidentiary hearing determine if there are facts to support the jurisdictional allegations." *Adams*, 697 F.2d at 1219. Although the Town raises several factual challenges to allegations in the Complaint, it raises only a facial challenge to the court's subject matter jurisdiction because it does not dispute any of the facts related to subject matter jurisdiction, only the legal conclusions to be drawn from those facts.

      b.  Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). As a result, the court accepts the complaint's factual allegations as true, and construes them in the light most favorable to the plaintiff. *Nemet Chevrolet*, 591 F.3d at 255.

Although "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," the "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). And importantly, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Likewise, "[l]abels, conclusions, recitation of a claim's elements, and naked assertions devoid of further factual enhancement will not suffice." *ACA Fin. Guar. Corp. v. City of Buena Vista*, *Virginia*, 917 F.3d 206, 211 (4th Cir. 2019). Ultimately, when considering a motion to dismiss, the court must "draw on its judicial experience and common sense" to determine whether the complaint "states a plausible claim for relief." *Iqbal*, 556 U.S. at 679.

6

c. Rule 12(c)

"After the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The Town "has not filed an answer in the instant case," and a "motion for judgment on the pleadings may not be filed *before* the answer." *Geltman v. Verity*, 716 F. Supp. 491, 491–92 (D. Colo. 1989); *see also Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005) (explaining that "the pleadings are [not] closed for the purposes of Rule 12(c) [until] a complaint and answer have been filed"); *Curtis v. Spacesaver Sys., Inc.*, No. 13-CV-2327, 2013 WL 6909160, at *1 (D. Md. Dec. 30, 2013). Accordingly, the court will treat the Town's motion as a motion to dismiss. *See id.* This treatment is analytically immaterial because "[a] motion for judgment o[n] the pleadings pursuant to Rule 12(c) is analyzed under the same standard as a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss." *Mendenhall v. Hanesbrands, Inc.*, 856 F. Supp. 2d 717, 723 (M.D.N.C. 2012).

## IV. Analysis

### a. The Housing Authority's Capacity

The Town first contends that all claims against the Housing Authority should be dismissed because the Housing Authority lacks capacity to be sued, citing the Town's dissolution of it in February 2020. DE 30 at 5.[2] As support, the Town directs the court to the articles of dissolution of the Housing Authority, a public record the contents of which the court may take judicial notice. *See id.*; *see also* DE 29-6; *Tellabs, Inc.*, 551 U.S. at 322. Plaintiffs respond by suggesting that the Town dissolved the Housing Authority in form but not substance, pointing to the fact that the Housing Authority remains listed as the owner of Holly Plaza in property records, and that the

---

[2] A party must raise the issue of capacity "by a specific denial." Fed. R. Civ. P. 9(a)(2). A defendant may do so through a motion to dismiss. 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FED. PRAC. & PROC. CIV. § 1294 (4th ed.). The Town here has properly raised the issue of capacity. *See* DE 30 at 5-6.

7

Housing Authority has continued to purchase insurance long after the date of its dissolution. DE 35 at 9-10.

Courts treat arguments related to capacity differently. Some view "[t]he defense of lack of capacity to be sued" as one "properly brought before the Court on a motion to dismiss under Rule 12(b)(6) for failure to state a claim." *Alley v. Yadkin Cnty. Sheriff Dep't*, No. 1:16-CV-100, 2017 WL 5635946, at *1 (M.D.N.C. Jan. 27, 2017). Others treat capacity as a matter of personal jurisdiction. *Henderson v. Fairfax-Falls Church Commnity Serv. Bd.*, No. 1:18-CV-825, 2018 WL 6037522, at *2 (E.D. Va. Nov. 15, 2018) ("An entity that does not have capacity to be sued is outside the personal jurisdiction of the court."), *aff'd sub nom. Henderson v. Fairfax-Falls Church Cmty. Servs. Bd.*, 771 F. App'x 205 (4th Cir. 2019). Still more consider capacity arguments to function as "an affirmative defense, not a jurisdictional issue." *Davis v. Lifetime Cap., Inc.*, 560 F. App'x 477, 478 n.2 (6th Cir. 2014). And at times, the question of capacity is fact-bound, so courts may defer making a ruling until there has been "additional discovery." *Centreville Citizens for Change v. City of Cahokia Heights*, 640 F. Supp. 3d 831, 839 (S.D. Ill. 2022).

There is merit to each of these positions; arguments about a party's capacity fuse together elements of different doctrines. But critical to the court's analysis here is the manner in which North Carolina law treats dissolution of housing authorities. After all, a government entity's capacity to be sued is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3).

North Carolina law permits a city to abolish a housing authority. N.C.G.S. § 157-4.1(b). In those circumstances, "[a]ll obligations of the housing authority, . . . shall be assumed by the city, and all such obligations . . . shall be constituted obligations . . . of the city." N.C.G.S. § 157-

8

4.1(b)(6). As the Town concedes, by dissolving the Housing Authority, all "assets and liabilities" of the Housing Authority were "assumed by the [] Town." DE 37 at 1.

Plaintiffs' arguments in response do not meaningfully discredit the validity of the dissolution of the Housing Authority. The Housing Authority may still be listed on the deed of Holly Plaza, but its interest in the property "vest[ed] in" the Town after the dissolution. N.C.G.S. § 157-4.1(b)(2). And although the Housing Authority has ostensibly continued to purchase insurance for Holly Plaza, the Town is authorized to exercise the same authority as a housing authority after dissolution, such as insuring property. N.C.G.S. § 157-4.1(a) & (b) (providing that city which abolishes a housing authority may itself exercise the powers, duties, and responsibilities of a housing authority).

Ultimately, the court agrees with the Town in part.[3] The Housing Authority must be dismissed from this action because it lacks capacity to be sued. Fed. R. Civ. P. 17(b)(3). But Plaintiffs' claims against the Housing Authority will not be dismissed; they remain pending against the Town. The court specifically finds that, by operation of North Carolina law, the Town has assumed the liabilities of the Housing Authority, and Plaintiffs' claims against the Housing Authority may proceed against the Town. N.C.G.S. § 157-4.1A(b)(6); *see also Smith-Courtney Co. v. Bd. of Rd. Comm'rs of Hertford Cnty.*, 182 N.C. 149, 108 S.E. 443, 444–45 (1921) ("Where a municipal corporation is dissolved, and a new corporation is created, composed of . . . substantially the same taxable property [and] organized for the same general purposes, . . . it is the successor of the old corporation, and is liable for its debts."); *Broadfoot v. City of Fayetteville*, 124 N.C. 478, 32 S.E. 804, 806 (1899) ("It must be that the creditors of a defunct municipal corporation

---

[3] In its motion to dismiss, the Town argued that the "claims" against the Housing Authority should be dismissed. DE 30 at 5. In its Reply, the Town revised that position to argue that the Housing Authority "should be dismissed as a party-Defendant." DE 37 at 2. This latter argument has merit.

9

. . . have the right in equity to have new corporation . . . considered as the successor of the old, at least so far as its liabilities for the debts of the old corporation are concerned."); *cf. Port of Mobile v. Watson*, 116 U.S. 289, 305 (1886) (state's passage of law that impaired its ability to meet obligations to creditors for outstanding bonds "is forbidden by the constitution of the United States"). The Town has conceded that it assumed the liabilities of the Housing Authority. DE 37 at 1. That concession, and the court's finding that Plaintiffs' claims against the Housing Authority may be pursued against the Town, operate as law of the case going forward. *TFWS, Inc. v. Franchot*, 572 F.3d 186, 191 (4th Cir. 2009).

      b.  Governmental Immunity

Next, the Town argues that it is entitled to governmental immunity. DE 30 at 6-7. The doctrine of governmental immunity "is not merely an affirmative defense to claims; it is a complete immunity from being sued in court." *Ballard v. Shelley*, 257 N.C. App. 561, 564, 811 S.E.2d 603, 605 (2018) (internal quotation mark omitted). But this immunity can be waived. *Magana v. Charlotte-Mecklenburg Bd. of Educ.*, 183 N.C. App. 146, 148, 645 S.E.2d 91, 92 (2007).

The Town's argument as to governmental immunity lacks merit for two reasons. First, the Complaint alleges that the Town entered into a contract with HUD and rental agreements with Plaintiffs. DE 24 at 4-5. A local government "waives [governmental] immunity when it enters into a valid contract, to the extent of that contract." *Wray v. City of Greensboro*, 370 N.C. 41, 47, 802 S.E.2d 894, 899 (2017); *Smith v. State*, 289 N.C. 303, 320, 222 S.E.2d 412, 423–24 (1976). Therefore, Plaintiffs have plausibly alleged that the Town waived governmental immunity for the contract-based claims in the Amended Complaint. *See Bates v. Charlotte-Mecklenburg Historic Landmarks Comm'n*, 292 N.C. App. 1, 9, 897 S.E.2d 1, 8 (2024) (holding that waiver of

governmental immunity extends to claims for breach of implied covenants as well as contract claim).

In addition, Plaintiffs allege that the Town waived its immunity for other claims "by the purchase of liability insurance." DE 24 at 2. In North Carolina, both municipalities and municipal "housing authorit[ies] ha[ve] statutory authority to accept liability for [their] governmental functions by the purchase of insurance." *Evans v. Hous. Auth. of City of Raleigh*, 359 N.C. 50, 57, 602 S.E.2d 668, 673 (2004); *Clancy v. Onslow Cnty.*, 151 N.C. App. 269, 273, 564 S.E.2d 920, 923 (2002); N.C.G.S. § 160A-485(a). In its motion to dismiss (and reply brief), the Town failed to advance any argument that its liability insurance policy excludes coverage for claims such as the ones raised by Plaintiffs in this action, *see* DE 30; DE 37, so dismissal on grounds of governmental immunity at this stage is unwarranted.[4]

### c. Punitive Damages

The Town next argues that punitive damages are unavailable against it. DE 30 at 9. The Town is correct; "[t]he common law and the overwhelming weight of modern authority have rejected the award of punitive damages against a municipal corporation." *Long v. City of Charlotte*, 306 N.C. 187, 206, 293 S.E.2d 101, 114 (1982). As a consequence, "a statutory provision is required to authorize punitive damages against local government entities." *Crain v. Butler*, 419 F. Supp. 2d 785, 794 (E.D.N.C. 2005); *see also Harrison v. Chalmers*, 551 F. Supp. 2d 432, 437 (M.D.N.C. 2008) (observing that state "statutory provision must do more than merely provide for punitive damages; it must remove governmental immunity for those damages").

---

[4] The Town filed an affidavit from its Town Manager in connection with the motion to dismiss, although the affidavit is not referenced in the Town's argument related to governmental immunity. DE 29. That affidavit discusses a series of insurance-related communications with the North Carolina League of Municipalities that occurred after Plaintiffs instituted this action. DE 29-2. These documents were not incorporated into the Amended Complaint by reference, and they are not subject to judicial notice. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 165-66 (4th Cir. 2016); *Tellabs, Inc.*, 551 U.S. at 322. The court therefore cannot consider this extrinsic evidence without converting the Town's motion to one for summary judgment. *See* Fed. R. Civ. P. 12(d).

11

Plaintiffs offered no response in opposition to the Town's argument. *See* DE 35. "[F]ailing to respond to an argument constitutes an abandonment of a claim." *Sasser v. Safe Home Sec., Inc.*, No. 1:18-CV-746, 2019 WL 3858607, at *5 (M.D.N.C. Aug. 16, 2019) (collecting cases); *see also Pueschel v. United States*, 369 F.3d 345, 354 (4th Cir. 2004) (holding that district court is authorized to dismiss claim where argument in support of dismissal is left "uncontroverted" by plaintiff's failure to respond). Accordingly, the court dismisses any claim for punitive damages against the Town.

### d. UDTPA Claim

The Town also argues for dismissal of Plaintiffs' UDTPA claim. DE 30 at 9-10. Dismissal is warranted. UDTPA claims may only be raised against a "person, firm, or corporation." N.C.G.S. § 75-16. Local governments and their agencies are none of those things, and therefore are "not subject to liability under Chapter 75." *DiCesare v. Charlotte-Mecklenburg Hosp. Auth.*, 376 N.C. 63, 85, 852 S.E.2d 146, 161 (2020); *Rea Const. Co. v. City of Charlotte*, 121 N.C. App. 369, 370, 465 S.E.2d 342, 343 (1996) ("as an agency of the State, a city may not be sued under Chapter 75"). Plaintiffs offered no response in opposition to the Town's argument, thereby abandoning the claim. *Sasser*, 2019 WL 3858607, at *5; *Pueschel*, 369 F.3d at 354. The court therefore dismisses Plaintiffs' UDTPA claim against the Town.

### e. The Pendergraph Contract

Next, the Town disclaims liability for all claims, citing the contract the Housing Authority executed with Pendergraph. DE 30 at 10-12. This contention does not support dismissal for three reasons. First, The Town and the Housing Authority owned and operated Holly Plaza for 39 years before enlisting the services of Pendergraph. DE 24 at 3-4. The allegations in the Amended Complaint address actions both before and after the Housing Authority and Pendergraph entered

12

into an agreement, so the existence of that agreement is not dispositive. *See id.* at 4 (describing HUD's concerns in 2019 prior to existence of contract with Pendergraph). Second, Plaintiffs allege breaches of the lease agreements they signed with the Town (not Pendergraph) and other tortious conduct by the Town. *See id.* at 17-18. The existence of a contract between the Town and a third party may implicate Rule 14 of the Federal Rules of Civil Procedure, but it does not nullify Plaintiff's claims against the Town.

And third, the agreement between the Housing Authority and Pendergraph contained an indemnity clause, through which the Town and the Housing Authority agreed to indemnify Pendergraph for all claims against it, with limited exception. DE 34 at 12-16. The Town has only raised a broad and general argument that Pendergraph is liable in light of the agreement; the Town has not argued that an exception to the indemnity clause applies. *See* DE 30 at 10-12. As a result, the court declines to dismiss the claims against the Town on the basis of the contract with Pendergraph.

### f. Release Agreements

The Town also asserts that claims by certain putative class members are barred because those individuals executed release agreements with the town. *Id.* at 12-13. Addressing this assertion would require consideration of documents that are not integral to or explicitly relied on in the Amended Complaint. *Goines*, 822 F.3d at 165-66; *Tellabs, Inc.*, 551 U.S. at 322. At this stage of the proceedings, the court will not dismiss claims of putative class members on this basis. The Town's position is better reserved for class certification or summary judgment.

### g. Third-Party Beneficiary

Lastly, the Town contends for the first time in its reply brief that Count One should be dismissed because Plaintiffs are not third-party beneficiaries of the Town's contract with HUD.

13

DE 37 at 3-4. Arguments raised for the first time in reply briefs are not properly before the court. *United States v. Burley*, 567 F. App'x 183, 185 (4th Cir. 2014); *Tyndall v. Maynor*, 288 F.R.D. 103, 108 (M.D.N.C. 2013); Local Civil Rule 7.1(g)(1) (permitting replies "to matters initially raised in a response"). The court thus will not consider this final argument.

**V.  Conclusion**

The Town's motion to dismiss [DE 28] is GRANTED IN PART and DENIED IN PART. Specifically:

1)  The Housing Authority is dismissed as a Defendant, but Plaintiff's claims against the Housing Authority may proceed against the Town;

2)  Plaintiff's claim for punitive damages against the Town is dismissed;

3)  Plaintiff's UDTPA claim against the Town is dismissed; and

4)  In all other respects, the motion to dismiss is denied.

SO ORDERED this ___9th___ day of September, 2024.

Richard E Myers II

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE

14